**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROSEMARIE VALINOTI, JERRY ROMERO, JORGE VELEZ, LAURA PECORARO, and LOUISE BAUER, on behalf of themselves and all other persons similarly situated, <br><br> *Plaintiffs*, <br><br> -against- <br><br> ARAMARK CAMPUS LLC, and ARAMARK SPORTS AND ENTERTAINMENT SERVICES, LLC, <br><br> *Defendants*. | No.  1:24-cv-08305-JRC <br><br> **RULE 23 CLASS ACTION** <br> **AMENDED COMPLAINT** <br><br> **Plaintiffs Demand** <br> **Trial By Jury** |

Plaintiffs Rosemarie Valinoti ("Valinoti"), Jerry Romero ("Romero"), Jorge Velez, ("Velez"), Laura Pecoraro ("Pecoraro"), and Louise Bauer ("Bauer", collectively the "Plaintiffs") on behalf of themselves and others similarly situated, bring this action for damages and other legal and equitable relief against defendants Aramark Campus LLC and Aramark Sports and Entertainment Services, LLC (collectively, "Aramark," or the "Defendants") and allege as follows:

**NATURE OF THE ACTION**

1.     This lawsuit seeks to recover uniform maintenance pay for Plaintiffs and similarly situated hourly workers covered by § 146-3.13 of New York State's Department of Labor Hospitality Industry Wage Order ("Wage Order") who worked in bars, food concessions areas, restaurants, and in catering facilities operated by Defendants at Citi Field in Queens County, as well as other locations open to the public in New York State who were required to wear uniforms and not paid weekly uniform maintenance pay. The wash and wear exception does not apply to the Plaintiffs or putative class because Defendants' policies and practices with respect to

uniforms failed to provide employees with a sufficient number for the number of shifts worked each week.

2.      Defendants employ hundreds of Hospitality Industry workers at Citi Field alone, and employ an unknown number of Hospitality Industry Workers at other locations in New York State.  Defendants have centralized management and control and maintain a policy of disregarding the Hospitality Industry Wage Order in failing to provide a sufficient number of required uniforms to cover the number of shifts worked each week and failing to provide weekly uniform maintenance pay.

## PARTIES

3.      Plaintiff Rosemarie Valinoti is an adult, over eighteen years old, residing in the State of New York, Queens County.

4.      Plaintiff Jerry Romero is an adult, over eighteen years old, residing in the State of New York, Queens County.

5.      Plaintiff Jorge Velez is an adult, over eighteen years old, residing in the State of New York, Queens County.

6.      Plaintiff Laura Pecoraro is an adult, over eighteen years old, residing in the State of New York, Nassau County.

7.      Plaintiff Louise Bauer is an adult, over eighteen years old, residing in the State of Florida, Sumter County.

8.      Plaintiffs and the Proposed Class were, throughout their entire employment with Defendants, covered, non-exempt employees working in the hospitality industry within the meaning of the NYLL, FLSA, and New York State's Department of Labor Hospitality Industry Wage Order.

9.      Defendant Aramark Campus LLC is a foreign limited liability company formed

under the laws of Delaware with its service of process address in the care of C T Corporation

System located at 28 Liberty Street, New York, NY,10005.  Aramak Campus, LLC with an

address of 2400 Market Street Philadelphia, PA 19103 is the employer entity listed on

Plaintiffs' pay stubs.

10.    Defendant Aramark Sports and Entertainment Services, LLC is a foreign limited

liability company formed under the laws of Delaware with its service of process address in the

care of C T Corporation System located at 28 Liberty Street, New York, NY,10005.

11.    Defendants are considered a large employer, having at least 11 or more

employees during the duration of Plaintiffs' employment.

12.    Defendants maintained control, oversight, and direction over Plaintiffs and the

proposed class in regards to timekeeping, payroll, and other employment practices, and

functioned as an employer pursuant to the NYLL and the FLSA.

13.    Defendants, by virtue of ownership, management, and control over the wages and

work of Plaintiffs and the proposed class, are considered an employer under the NYLL and the

FLSA.

14.    Defendants applied the same employment policies, practices, and procedures to

all non-exempt workers, including the hospitality industry workers in its operation, including

policies, practices, and procedures with respect to its uniform policy.

## JURISDICTION AND VENUE

15.    This Court has original jurisdiction pursuant to the Class Action Fairness Act of

2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the

Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs,

and Plaintiffs and the members of the proposed class are citizens of states different from those of

Defendants.

16.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because the Defendants maintain a place of business in this district and the majority of the conduct making up the basis of the complaint took place in this district.

## STATEMENT OF FACTS

17.     Defendants provide a range of Hospitality Industry workers across New York State, including over 600 employees based in Citi Field in Queens County, New York.

18.     A job search on Defendants' website revealed over 100 hourly job openings in food service roles in a variety of locations across New York State.

19.     Defendants are an employer of Plaintiffs under the New York Labor Law.

20.     Defendants had and continues to have the power to hire and fire employees; supervise and control employee work schedules or conditions of employment; determine the rate and method of payment; and maintain employment records.

21.     The below facts are pleaded according to Plaintiffs' best recollections.  Plaintiffs reserve the right to amend these pleadings upon receiving discovery from Defendants, including payroll and employment records that Defendants are obligated to retain under the NYCRR. Upon information and belief, the below facts are consistent among Plaintiffs and the Proposed Class.

22.     Plaintiffs all worked in hourly, non-exempt Hospitality Industry roles at Citi Field located at 41 Seaver Wy, Flushing, NY 11368.

**Plaintiff Rosemarie Valinoti**

23.     Plaintiff Valinoti began working for Defendants as a bartender at Citi Field on or around March 6, 2016 until on or around July 12, 2024.

24.     When Valinoti worked as a bartender on Mets game days, Defendants required her to wear a "Gameday" uniform blue polo shirt that had the Citi Field logo on the front and

"Staff" written on the back.  Defendants also provided a blue jacket with the same Citi Field logo and a blue baseball cap.

25.    Defendants provided Plaintiff Valinoti with just one polo shirt per year, even though she would work as many as five or six games in a row when the Mets played a home stretch of games at Citi Field.

26.    Despite Plaintiff Valinoti working as a bartender on game days covered by the Hospitality Industry Wage Order and failing to provide her with enough uniforms to cover the number of days per week that she worked, Defendants failed to pay Plaintiff Valinoti any uniform maintenance pay on the days that she was required to wear Defendants' blue uniform polo shirt.

27.    For non-game day events like weddings, corporate events, trade shows, holiday parties or other large events held at Citi Field, Defendants required Plaintiff Valinoti to wear a blue long sleeve button down shirt and a blue vest that Defendant provided as well as blue pants that Valinoti provided herself.   On some occasions when there was a catered event on a game day, Defendants required Valinoti to wear the blue long sleeve shirt, vest and blue pants uniform. Sometime in 2022, Defendants changed Valinoti's blue long sleeve uniform shirt to a black long sleeve uniform shirt.

28.    Defendants provided Valinoti with one blue long sleeve shirt per year from 2016 until 2019.  Defendants only provided Valinoti with one vest in 2016.  From 2021 to 2024, Defendants provided Valinoti with just one black button down shirt per year.

29.    Starting in 2019, Defendants did pay Valinoti varying amounts of uniform maintenance pay during the weeks when she was required to wear Defendants' blue long sleeve button shirt and vest, or black button down shirt when this item was changed in 2021.

30.    In or around Spring 2023, when Citi Field opened additional bar venues called "Premium Clubs," Defendants assigned Plaintiff Valinoti to work at the "Cadillac Club" and the "Empire Club."  For working at these clubs, Defendants provided Valinoti with a third uniform, a single long sleeve white button down shirt and suspenders.  Defendants instructed Valinoti and the other workers at those venues to provide their own black pants.

31.    Defendants never paid Plaintiff any uniform maintenance pay for the weeks when she was required to wear the new white long sleeve button down while working at the Cadillac Club and Empire Club.

32.    Defendants required Plaintiff Valinoti to wear her uniforms to work in a clean condition to work every day.

33.    Valinoti did wear her required uniforms to work every day.

34.    Defendants never laundered, nor offered to launder Valinoti's required uniforms.

35.    Whenever Plaintiff Valinoti requested an additional uniform shirt or jacket, Defendants told her that they "didn' t have any extras."

36.    Plaintiff Valinoti has retained a collective bargaining agreement between .P.E.I.U Local 153 and Defendant Aramark Sports and Entertainment Services, LLC (the "CBA").

37.    The CBA does include section covering uniform maintenance pay, which states that:

38.    "Aramark will provide the following uniform maintenance allowance for those employees who are required to wear pressed long sleeve shirts, and only when such shirts are required to be worn."

39.    This CBA clause is insufficient because it unlawfully limits Defendants obligation to pay uniform maintenance allowance to their employees to when they are required to wear

"pressed long sleeve shirts," and ignores other required clothing, such as Defendants' blue polo shirts bearing the Citi Field logo that also meet the definition of a uniform.

40.     Defendants are not available to rely on the CBA clause after 2019 because the uniform allowance rates were never updated.  The CBA lists a pay schedule based on 2018 and 2019 required uniform allowance amounts for those years based on the "Low", "Medium" and "High" weekly hours totals.

41.     For example, Plaintiff Valinoti has retained pay records for 2024 which show that she was paid $14.75 in uniform allowance for a week when she worked 27.8 hours at non-gameday events when she was required to wear a long sleeve shirt.

42.     However, according to the current Hospitality Industry Wage Order, Plaintiff was owed $15.75 in weekly uniform allowance for a week during which she worked between 20 and 30 hours, not $14.75.

43.     When Plaintiff Valinoti raised the issue of unpaid uniform maintenance pay to Defendants' payroll department in 2023, her concerns were not addressed.

44.     Defendants did not pay Valinoti any uniform maintenance pay from 2016 to 2019.

45.     Midway through 2019 Defendants began paying Valinoti some uniform maintenance on non-game days when she was required to wear the blue long sleeve button down uniform shirt and pants.  Sometime in 2022,  Defendants changed the blue long sleeve button down uniform shirt to black longs sleeve button down uniform shirt.  Defendants never paid Valinoti any uniform maintenance pay when she was required to wear the blue polo uniform shirt on game days from 2016 to 2024.

**Plaintiff Jerry Romero**

46.     Plaintiff Romero began working for Defendants in or around September 2021 until in or around September 2024.

47.    Romero worked for Defendants as a cashier at a food concession stand at Citi Field in Queens County and primarily worked Mets baseball games.

48.    Defendants required that Plaintiff Romero wear a blue polo shirt every day to work bearing the Citi Field logo on the front and "Staff" on the back.

49.    Defendants required Romero to wear the uniform shirt in a clean condition every day.

50.    Romero did wear his uniform shirt to work every day.

51.    Defendants only provided Romero with two uniform polo shirts, despite the fact that he worked as many as five or six days per week when the Mets played a home stretch of games.

52.    Defendants did not launder or offer to launder Plaintiff Romero's uniform and never paid him uniform maintenance pay.

**Plaintiff Jorge Velez**

53.    Plaintiff Jorge Velez worked for Defendants as a bartender at Citi Field from 2016 to in or around October 2022.

54.    For game days, Defendants provided Velez with two polo shirts every year that had the Citi Field logo on front and "Staff" on the back.  They also provided Velez with a jacket bearing the Citi Field logo and a baseball cap.

55.    Defendants never provided Velez with any uniform maintenance pay during the weeks that he was required to wear the polo uniform shirt on game days.

56.    Plaintiff Velez typically worked as many as 5-6 days in a row during the baseball season when the Mets had a stretch of home games.

57.    On non-game days, Plaintiff Velez was required to wear a blue long sleeve button down shirt along with an orange tie and a vest.  Defendants only provided Velez with one blue long sleeve shirt.

58.    Despite working 5-6 days in a row, Defendants never provided Velez with more than two uniform polo shirts per year and one long-sleeve button down uniform shirt.

59.    Defendants required Plaintiff Velez to wear the uniform shirt to work every day in a clean condition.

60.    Plaintiff Velez did wear the uniform to work every day.

61.    Defendants never laundered, nor offered to launder Velez's uniform shirts and did not pay him the required uniform maintenance pay.

**Plaintiff Laura Pecoraro**

62.    Plaintiff Laura Pecoraro began working for Defendants as a bartender at Citi Field in or around 2013.

63.    Pecoraro usually worked as a bartender at the Honda Clubhouse area in Citi Field.

64.    For game days, Defendants provided Pecoraro with one or two blue polo shirts every year that had the Citi Field logo on front and "Staff" on the back.  They also provided Pecoraro with a jacket bearing the Citi Field logo and a baseball cap.

65.    Defendants never provided Pecoraro with any uniform maintenance pay during the weeks that she was required to wear the polo uniform shirt when she worked on game days.

66.    Plaintiff Pecoraro worked as many as 7 to 9 days in a row during the baseball season when the Mets had a stretch of home games.

67.    On catered non-game events like weddings and bar mitzvahs, Plaintiff Pecoraro was required to wear a light blue long sleeve button down shirt.  Defendants only provided Pecoraro with one light blue long sleeve shirt.

68.     Despite working as many 7 to 9 days in a row, Defendants never provided Pecoraro with more than two uniform polo shirts per year and one long-sleeve button down uniform shirt.

69.     Defendants required Plaintiff Pecoraro to wear the uniform shirt to work every day in a clean condition.

70.     Plaintiff Pecoraro did wear the uniform to work every day.

71.     Defendants never laundered, nor offered to launder Pecoraro uniform shirts and did not pay her the required uniform maintenance pay.

**Plaintiff Louise Bauer**

72.     Plaintiff Louise Bauer worked for Defendants as a bartender at Citi Field from on or around February 18, 2016 until the end of her employment in or around early 2021.

73.     Bauer usually worked as a bartender at the Honda Clubhouse, Coca-Cola Corner, Foxwoods, Metropolitan Hospitality, and Bullpen areas in Citi Field.

74.     For game days, Defendants provided Bauer with one or two blue polo shirts every year that had the Citi Field logo on front and "Staff" on the back.  They also provided Bauer with a jacket bearing the Citi Field logo and a baseball cap bearing the Citi Field logo.

75.     Defendants never provided Bauer with any uniform maintenance pay during the weeks when she was required to wear the polo uniform shirt on game days.

76.     Plaintiff Bauer worked as many as 7 to 9 days in a row during the baseball season when the Mets had a stretch of home games.

77.     On catered non-game events like weddings, corporate events, and other parties, Plaintiff Bauer was required to wear what Bauer and her coworkers called the  "vest uniform," which consisted of a light blue long sleeve button down shirt, a dark blue vest, and a tie. Defendants only provided Bauer with one light blue long sleeve shirt.  After repeated requests

for additional uniform items, Defendants did once provide Bauer with a second light blue long sleeve shirt.  Defendants also required  Bauer and her coworker to wear the vest uniform on some game days if there were special events being held during games.

78.    Defendants paid Bauer uniform maintenance pay for some, but not all, of the weeks when she was required to wear her vest uniform which included long-sleeved uniform shirt, a vest, and tie, mostly on non-game days, but also for some game-day special events.

79.    Even for weeks when the CBA required Defendants to pay Bauer uniform maintenance pay after she wore the required long-sleeved uniform shirt on non-game day events, Bauer noticed missing uniform pay on many occasions and had to reach out to Defendants to demand payment.  Plaintiff Bauer has retained emails from November 2017 and May 2019 where she is forced to demand her missing uniform maintenance pay in those months.

80.    For example, in an email sent in May 2019, Bauer emailed Defendants with the subject line "Missing One Uniform Pay Wed May 1" to make sure that she was paid uniform maintenance pay after being required to wear the long-sleeve and vest uniform.

81.    Despite working as many 7 to 9 days in a row, Defendants never provided Bauer with more than two uniform polo shirts per year and one long-sleeve button down uniform shirt.

82.    Defendants required Plaintiff Bauer to wear the uniform shirt to work every day in a clean condition.

83.    Plaintiff Bauer did wear the uniform to work every day.

84.    Defendants never laundered, nor offered to launder Bauer's uniform shirts and did not pay her the required uniform maintenance pay.

## RULE 23 CLASS ALLEGATIONS

85.    Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated on-exempt employees paid on on an hourly basis who worked for Defendants as workers

covered under the Hospitality Industry Wage Order in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the Class Period").

86.    The Class Period is further expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar order, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

87.    Defendants required Plaintiffs and the proposed class to wear a uniform.  Among the uniform items were a polo shirt bearing the Citi Field logo and the word "Staff" on the back of the shirt.

88.    Plaintiffs bring this action on their own behalf and as a class consisting of:

> All current and former hourly paid non-exempt employees who worked for Defendants as Hospitality Industry Workers in the State of New York during the Class Period.

89.    The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to the Plaintiffs, and calculation of such number would require facts in the sole control of Defendants, upon information and belief the size of the Class is believed to be in excess of 600 individuals.  In addition, the names of all potential members of the Class are not known.

90.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

91.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

92.     There is no conflict between Plaintiffs and any other member of the Class.

93.     The questions of law and fact common to the Class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to, the following:

    a.  Whether Defendants require their employees to wear uniforms that meet the definition of Required Uniform?

    b.  How many of each such uniform were provided?

    c.  How many hours per week did the employee work for purposes of determining entitlement to the "low", "middle" or "high" rate for uniform maintenance pay as per 12 NYCRR § 146-1.7?

    d.  For how many uniforms did the employer reimburse the employee to purchase and wear at work?

    e.  What were the number of regularly scheduled work shifts per week?

    f.  Whether Defendants laundered or offered to launder the required uniforms?

94.     The claims of Plaintiffs are typical to the claims of the Class because they are all current or former employees of Defendants who sustained damages, including underpayment of wages as a result of Defendants' common compensation policies and practices.

95.     The defenses that Defendants are likely to assert against the Plaintiffs' claims are typical of the defenses that Defendants are likely to assert against the Class.

96.     Plaintiffs and their counsel Mohammed Gangat, Esq. will fairly and adequately protect the interests of the Class.

97.     Plaintiffs have retained counsel experienced in complex wage and hour class action litigation.

98.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

99.     Plaintiffs and the Class members lack the financial resources to adequately prosecute separate lawsuits against Defendants.

100.    A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendants' policies.

**FIRST CAUSE OF ACTION**

**ON BEHALF OF PLAINTIFF AND THE RULE 23 CLASS**

*New York Uniform Maintenance Pay Class Claim*

101.    Plaintiffs allege and re-allege all of the other paragraphs contained herein.

102.    Defendants required Plaintiffs and the Class to wear a uniform consisting of shirts bearing the Citi Field logo.

103.    Plaintiffs' and the Class's uniforms were issued by Defendants for the expressed benefit of Defendants and it was a condition of their employment to wear them during each shift.

104.    Defendants did not pay Plaintiffs the required weekly uniform maintenance pay.

105.    Defendants failed to supply sufficient articles of uniform clothing consistent with the average number of days per week worked by Plaintiffs and the Class.

106.    Defendants did not, and did not offer, to, wash, iron, dry clean, alter, repair, or perform other maintenance necessary for Plaintiffs' or the Class' required uniform.

107.    Defendants did not maintain Plaintiffs' or the Class' required uniform under the meaning of the New York Labor Law.

108.    Defendants did not, and did not offer to, launder the required uniforms free of charge and with reasonable frequency, and did not inform Plaintiffs or the Class in writing of such service. .

109.    Plaintiffs and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendants require.

110.    Defendants never paid Plaintiffs or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms nor did they provide them in sufficient number to cover all workshifts of in accordance with 12 N.Y.C.R.R. § 146-1.7.

111.    Defendants' conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 146 the Minimum Wage Order.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, demand judgment against Defendants as follows:

a.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this action, to Proposed Rule 23 Class;

b.  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c.  Designation of Plaintiffs as representatives of the New York Rule 23 Class and counsel of record as Class Counsel;

d.  Certification of a class as described herein pursuant to CPLR Article 9 and appointing Plaintiffs as representatives of the Class and Plaintiffs' counsel as lead counsel for the class;

e.  All damages which Plaintiffs and the Class have sustained as a result of Defendants'
    conduct, including but not limited to unpaid and underpaid wages and other
    compensatory damages;

f.  Prejudgment and post-judgment interest;

g.  Reasonable attorneys' fees and costs of the action on the basis of being the prevailing
    party in a NYLL action to recover wages;

h.  A jury trial on these issues to determine liability and damages;

i.  Such other relief as this Court shall deem just and proper.

Dated:  New York, NY                     ***Respectfully Submitted,***
        February 5, 2025

Mohammed Gangat, Esq.
LAW OFFICE OF MOHAMMED GANGAT
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com